No. 19-10222

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

NICOLE SANCHEZ; CASEY SIMPSON; EDWARD LAROY SIMPSON, II, Individually
and as the Representative of the Estate of Diana Lynn Simpson,
*Plaintiffs-Appellants*

v.

YOUNG COUNTY, TEXAS;
YOUNG COUNTY SHERIFF'S DEPARTMENT,
*Defendants- Appellees*

Appeal from the United States District Court
for the Northern District of Texas – Dallas Division

MOTION TO RECONSIDER SINGLE-JUDGE ORDER DENYING
MOTION OF THE NATIONAL INSTITUTE FOR JAIL OPERATIONS FOR AN
EXTENSION OF TIME TO REQUEST LEAVE TO FILE AN AMICUS BRIEF

G. Todd Butler
Nicholas F. Morisani
PHELPS DUNBAR LLP
4270 I-55 North
Jackson, Mississippi  39211-6391
P.O. Box 16114
Jackson, Mississippi 39236-6114
Telephone: (601) 352-2300
Telecopier: (601) 360-9777

*Attorneys for Amici Curiae*

Through a single-judge order, the Court summarily denied an unopposed request for seven (7) extra days for the National Institute for Jail Operations to seek leave to file an amici brief.[1]  Amici respectfully ask the Court to reconsider that denial under Fifth Circuit Rule 27.2.

To begin, Amici seek to make clear that they appreciate this Court's busy docket. They likewise understand that some jurists wish not to be burdened by reconsideration requests at all.  *See, e.g.*, Hon. Richard S. Arnold, *Why Judges Don't Like Petitions for Rehearing*, 3 J. App. Prac. & Process 29 (2001) (noting Judge Hand's famous statement that he would never vote in favor of rehearing).

But the en banc process serves a vital role in this Court's jurisprudence.  *See, e.g.*, *Jimenez v. Wood Cty., Tex.*, 660 F.3d 841, 852–53 (5th Cir. 2011) (Smith, J. dissenting) (observing the importance of the en banc court to "take cases . . . to 'secure or maintain uniformity of the court's decisions' or decide a 'question of exceptional importance'") (quoting Fed. R. App. P. 35(a)) (joined by Jones, C.J. and Clement, J.).  And amicus briefs play an important supporting role.  *See generally Corrosion Proof Fittings v. E.P.A.*, 947 F.2d 1201, 1208 (5th Cir. 1991), opinion

---

[1] At the time of filing its motion, the National Institute for Jail Operations noted that other interested organizations had been contacted to ascertain whether those organizations wished to join an amicus brief in support of rehearing.  Since filing that motion, the National Association of Police Organizations has joined the effort to prepare an amicus brief.  The National Institute for Jail Operations and the National Association of Police Organizations will be referred to collectively in this motion as Amici.

1

clarified (Nov. 15, 1991) (observing one of the roles amici serve is "to bridge gaps in issues initially and properly raised by parties.").

Amici in this case would not seek leave to file a brief if they did not believe they had something meaningful to say. While Appellees are heavily focused on the facts, Amici is focused on legal doctrine, particularly how the Panel's analysis will impact future cases and, in turn, future operations in municipal and county jails.

Significantly, Amici's extension request was sought during the midst of the COVID-19 pandemic. Courts across the country, including the Supreme Court, have liberally granted extensions during these uncertain times. *See, e.g.*, U.S. Sup. Ct. R. Filing Extensions (providing "motions for extensions of time pursuant to Rule 30.4 will ordinarily be granted by the Clerk as a matter of course if the grounds for the application are difficulties relating to COVID-19 and if the length of the extension requested is reasonable under the circumstances."), available at https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf (last visited June 3, 2020). Additionally, no party in this case opposed Amici's request. *See generally* Fed. R. App. P. 29(a) (underscoring the importance of the scenario where parties do not oppose a request for leave to file an amicus brief).

Amici requested the seven (7) day extension last Wednesday, May 27, 2020, which would have made Amici's brief due June 3, 2020. Amici, however, did not receive an order denying the request until yesterday, June 2. That means that

PD.28868171.1

undersigned counsel has been diligently preparing the brief throughout that time period. The proposed amici brief is attached to this motion as Exhibit "A" in hopes that this Court will appreciate the effort that has been expended as a showing of good cause. Should the Court be inclined to grant this motion to reconsider, Amici respectfully request leave to file the proposed amici brief attached as Exhibit "A," for the reasons set forth above and those set forth in the initial motion filed by Amici on May 27, 2020.

Amici humbly ask the Court to reconsider the decision not to allow them the opportunity to seek leave to participate in the rehearing-consideration process. The brief ultimately may not persuade any member of the en banc Court but bringing more ideas to the table should be welcome. Amici ask that they not be denied that opportunity, especially when the request is not opposed and especially where the drafting effort is now complete.

Dated: June 3, 2020

Respectfully submitted,

By: /s/ G. Todd Butler
G. Todd Butler, MB #102907
Nicholas F. Morisani, MB #104970
PHELPS DUNBAR LLP
4270 I-55 North
Jackson, Mississippi 39211-6391
P.O. Box 16114
Jackson, Mississippi 39236-6114

Telephone: (601) 352-2300
Telecopier: (601) 360-9777

*Counsel for Amici Curiae*

PD.28868171.1

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS <u>AND TYPE STYLE REQUIREMENTS</u>

1.      This motion complies with the type-volume limitation of Fed R. App. P. 27(d)(2) because, excluding accompanying documents exempted by Fed. R. App. P. 27(a)(2)(B), it contains 692 words.

2.      Per Fed. R. App. P. 27(d)(2)(E), this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully Submitted,


By:  /s/ G. Todd Butler
G. TODD BULTER

Dated:  June 3, 2020.

PD.28868171.1

## CERTIFICATE OF SERVICE

I, G. Todd Butler, certify that I electronically filed this motion with the Clerk of the Court, using the electronic filing system, which sent notification of such filing to all counsel of record.

Dated:  June 3, 2020.

/s/ G. Todd Butler
G. TODD BUTLER

PD.28868171.1

No. 19-10222

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**NICOLE SANCHEZ; CASEY SIMPSON; EDWARD LAROY SIMPSON, II,
Individually and as the Representative of the Estate of Diana Lynn Simpson,**
*Plaintiffs-Appellants*

v.

**YOUNG COUNTY, TEXAS;
YOUNG COUNTY SHERIFF'S DEPARTMENT,**
*Defendants- Appellees*

_____

Appeal from the United States District Court
for the Northern District of Texas – Dallas Division

_____

AMICUS CURIAE BRIEF OF NATIONAL INSTITUTE FOR JAIL
OPERATIONS AND NATIONAL ASSOCIATION OF POLICE
ORGANIZATIONS IN SUPPORT OF APPELLEE'S PETITION FOR
REHEARING EN BANC

_____

G. Todd Butler
Nicholas F. Morisani
PHELPS DUNBAR LLP
4270 I-55 North
Jackson, Mississippi  39211-6391
P.O. Box 16114
Jackson, Mississippi 39236-6114
Telephone: (601) 352-2300
Telecopier: (601) 360-9777

*Attorneys for Amici Curiae*

EXHIBIT "A"

# CERTIFICATE OF INTERESTED PERSONS

So that the judges of this Court may evaluate possible disqualification or recusal, the undersigned counsel of record certifies that the following persons and entities have an interest in the outcome of this case, in addition to the persons and entities previously identified by the parties:

A.    Amici Curiae:

    1.    National Institute for Jail Operations; and

    2.    National Association of Police Organizations.

B.    Phelps Dunbar, LLP, G. Todd Butler, and Nicholas F. Morisani counsel for Amici Curiae.

SO CERTIFIED, this the 3rd day of June, 2020.


/s/ G. Todd Butler
Counsel for Amici Curiae

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

AMICI CURIAE HAVE SUBSTANTIAL INTERESTS IN THIS
    CASE ....................................................................................1

NO PARTY'S COUNSEL AUTHORED OR PAID FOR THIS
    BRIEF ..................................................................................2

ARGUMENT .....................................................................................2

I.    There are two primary routes pretrial detainees can take to
    establish a violation of their constitutional rights while
    detained, and this case involves the more difficult route. ..............................2

II.    The Panel's reliance on deficiencies observed by the Texas
    Commission on Jail Standards at the Young County Jail risks
    expanding the basis for *Monell* liability in similar contexts. .........................4

III.    The Panel's conclusion related to the County's policy of
    placing highly intoxicated detainees in holding cells to sleep off
    intoxication conflates the analysis between episodic acts or
    omissions and conditions of confinement. ......................................6

IV.    The Panel's analysis of Young County Jail's booking-in
    procedure encourages courts to apply a watered-down analysis
    of whether the challenged condition of confinement amounts to
    punishment of pretrial detainees and to delve into the minutiae
    of jail operations. ...........................................................9

V.    At bottom, the Panel's decision exposes municipal and county
    jail operators to increased risk of liability for suicidal actions
    pretrial detainees take outside the control and knowledge of
    those jail operators. .......................................................11

CONCLUSION ...................................................................................13

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
    LIMITATION, TYPEFACE REQUIREMENTS AND TYPE
    STYLE REQUIREMENTS ...........................................................................14

CERTIFICATE OF SERVICE ................................................................................15

PD.28868224.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bell v. Wolfish,*
441 U.S. 520 (1979).................................................................*passim*

*Burnette v. Taylor,*
533 F.3d 1325 (11th Cir. 2008) .........................................................12

*Evans v. City of Marlin, Tex.,*
986 F.2d 104 (5th Cit. 1993) ............................................................12

*Grayson v. Ross,*
454 F.3d 802 (8th Cir. 2006) ...........................................................12

*Hare v. City of Corinth, Miss.,*
74 F.3d 633 (5th Cir. 1996) (en banc) ...................................2, 3, 4, 13

*Estate of Henson v. Wichita County, Tex.,*
795 F.3d 456 (5th Cir. 2015) .....................................................3, 9, 10

*Estate of Hocker v. Walsh,*
22 F.3d 995 (10th Cir. 1994) ...........................................................12

*Montano v. Orange County,*
842 F.3d 865 (5th Cir. 2016) ........................................................6, 7

*Peterson v. City of Fort Worth,*
588 F.3d 838 (5th Cir. 2009) ............................................................5

*Sanchez v. Young Cty., Texas,*
866 F.3d 274 (5th Cir. 2017) ............................................................9

*Scott v. Moore,*
114 F.3d 51 (5th Cir. 1997) ..............................................4, 7, 11, 13

*Shepherd v. Dallas Cty.,*
591 F.3d 445 (5th Cir. 2009) .........................................................4, 8

*Watkins v. City of Battle Creek,*
273 F.3d 682 (6th Cir. 2001) ...........................................................12

iv

**State Statutes**

Tex. Gov. Code Section 511.009 ................................................................5

Tex. Gov. Code Section 511.012 ................................................................5

**Regulations**

Tex. Admin. Code § 251.1 .........................................................................5

Tex. Admin. Code § 297.2 .........................................................................5

Tex. Admin. Code § 297.5 .........................................................................5

**Other Authorities**

Eighth Amendment .....................................................................................1

Fourteenth Amendment ..............................................................................2

PD.28868224.1

## AMICI CURIAE HAVE SUBSTANTIAL INTERESTS IN THIS CASE

This case involves when a government entity can be held civilly liable for after-effect actions taken by a pretrial detainee prior to being taken into custody and outside the knowledge or control of the municipal entity.  Because both Amici Curiae represent the interests of such entities, they have a significant interest in the outcome of this case, as it may be used as precedent in the future.

The National Institute for Jail Operations was formed in 2011 and serves as the primary resource dedicated to serve those entities that operate jails, detention facilities, and correctional facilities.  NIJO provides a compilation of legal-based resources, information, and training for agencies to make facilities safer and more secure and to protect against adverse publicity and liability.  NIJO's work focuses on issues relating to the Eighth Amendment rights and responsibilities of county and municipal jail operators and their employees.  Thus, NIJO has a special interest in the Fifth Circuit panel's decision in this matter because it substantially implicates the burdens placed on jail operators to screen, assess, and monitor pretrial detainees in county jails.

The National Association of Police Organizations is a nationwide alliance of organizations committed to advancing the interests of law enforcement officers. Since NAPO's founding in 1978, it has become the strongest unified voice supporting law enforcement in the United States.  The organization represents over

1

1,000 police units and associations and over 241,000 sworn officers mutually dedicated to fair and effective law enforcement.

## NO PARTY'S COUNSEL AUTHORED OR PAID FOR THIS BRIEF

No party or party's counsel authored this brief or contributed money to this brief. The brief instead was paid for by Amici Curiae and authored by their counsel.

## ARGUMENT

On May 20, 2013, Diana Lynn Simpson died while being detained for public intoxication in the Young County Jail after she ingested "highly toxic" and "near lethal" levels of prescription medication prior to being detained. <u>ROA. 767</u>, <u>801</u>. The Panel's decision conflates the law related to pretrial detainee claims for *Monell* liability predicated on unconstitutional conditions of confinement and has created a precedent that will expand significantly municipal liability in this context moving forward. The en banc Court should intervene.

**I.    There are two primary routes pretrial detainees can take to establish a violation of their constitutional rights while detained, and this case involves the more difficult route.**

It is well-settled that a pretrial detainee's constitutional rights emanate from guarantees of the Fourteenth Amendment. *See Hare v. City of Corinth, Miss.*, <u>74 F.3d 633, 639</u> (5th Cir. 1996) (en banc). The legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an

2

episodic act or omission of an individual jail official. *Estate of Henson v. Wichita County, Tex.*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Hare*, 74 F.3d at 644-45).

Here, the challenge focuses solely on the conditions of confinement to which Simpson was exposed, which means the constitutional attack centers on the general conditions, practices, rules, or restrictions of her brief confinement at Young County Jail. *Hare*, 74 F.3d at 643. To prevail on a condition of confinement, a plaintiff must prove: (1) the existence of a condition which denies a pretrial detainee's basic human needs; (2) the condition is the result of either an explicit policy or a de facto policy resulting from a pattern of sufficiently extensive or pervasive acts or omissions by jail officials; and (3) the condition caused the violation of a constitutional right. *Duvall vs. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011).

Critically, the condition itself, not any act or omission of jail operators, must cause the violation of a pretrial detainee's rights. *See id.* Such a condition must amount to a form of punishment when dealing with a pretrial detainee. *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). Courts must look to the purpose of the condition imposed upon a pretrial detainee to determine whether it is a form of punishment:

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be

inflicted upon detainees qua detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.[1]

*Id*. at 539 (citations and footnotes omitted).

Where, as here, the alleged condition is not the result of an explicit policy, it must be the result of a de facto policy.  As such, it must be evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Hare*, 74 F.3d at 645.  *Monell* liability based on a condition of confinement created by a de facto policy traditionally is only found in the rarest of circumstances, and the Plaintiff attempting to bring a condition of confinement case based upon a pattern of activity faces a heavy burden "that has rarely been met in our case law." *Shepherd v. Dallas Cty.*, 591 F.3d 445, 453 (5th Cir. 2009).

## II.    The Panel's reliance on deficiencies observed by the Texas Commission on Jail Standards at the Young County Jail risks expanding the basis for *Monell* liability in similar contexts.

The Panel's reliance on the records from inspections by the Texas Commission for Jail Standards ("TCJS") is problematic.  In explaining its decision to reverse summary judgment on the failure to monitor claim, the Panel cites the TCJS reports regarding inadequate detainee monitoring.  Op. at 11. But the TCJS

---

[1] This standard is often referred to as the "reasonable relationship test." *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

standards do not set the constitutional standard, and the manner in which the Panel uses the TCJS reports not only conflicts with prior precedent, *see Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009), but, equally important, it risks discouraging efforts to improve jail conditions in the future.

Because jails necessarily restrict the liberty of many in medically challenging circumstances, Texas created the TCJS to monitor jail operations with goal of improving those operations. *See* Tex. Gov. Code § 511.009, Tex. Admin. Code § 251.1. This monitoring system includes random inspections of the state's county jails. *See* Op. at 5. During the inspections, the TCJS notes areas in which a county jail needs improvement as measured against the standards promulgated by the TCJS. Tex. Gov. Code § 511.012, Tex. Admin. Code § 297.5. In order to pass a jail inspection, the county jail must correct the observed deficiencies. *See* Tex. Admin. Code § 297.2.

The Panel, however, used the deficiencies noted through this monitoring effort as a weapon to establish *Monell* liability. In doing so, the Panel overlooked the fact Young County Jail passed the TCJS inspection each year (which means it corrected the deficiencies observed each year). More importantly, the Panel's use of the TCJS standards overlooks the fact those standards are not the constitutional standard. Put simply, proof that a county is engaged in a robust monitoring effort where deficiencies are measured against a set of standards is not proof that the

county is violating the Constitution. *See Bell*, 441 U.S. at 543 n.27 (observing that while "recommendations of [professional] groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question").

### III. The Panel's conclusion related to the County's policy of placing highly intoxicated detainees in holding cells to sleep off intoxication conflates the analysis between episodic acts or omissions and conditions of confinement.

Tracking the district court's analysis, the Panel found fact issues as to Appellants' failure to assess allegations. Op. at 13-18. The Panel concluded that jailers' consistent testimony created a fact issue as to whether the County has a policy of placing highly intoxicated detainees in holding cells to sleep off intoxication without first completing book-in procedures such as medical and suicide screening. Op. at 13. In reaching this conclusion, the Panel relied on what it referred to as an "uncannily similar case, *Montano v. Orange County*, 842 F.3d 865 (5th Cir. 2016) . . . ."

Although *Montano* also involved the tragic death of a pretrial detainee who was arrested for public intoxication, *Montano* involved a uniquely drastic failure to provide medical care to a pretrial detainee. In *Montano*, the pretrial detainee was left in an observation cell essentially unattended and unmonitored from time he was taken into custody until his death nearly five days later. 842 F.3d at 872. The detainee—who was mentally ill—lingered for nearly five days in the observation

cell, refused to eat or drink because he believed the meals and water were poisoned, and was never actually tested for drug or alcohol consumption of any kind. *Id.* at 870-72, 878-79. As the Panel noted, *Montano* held that consistent testimony from jail employees established a de facto policy that the particular jail had a practice of leaving intoxicated detainees in a cell until they become coherent. Op. at 14. Furthermore, the government entity in *Montano* essentially admitted deliberate indifference in its closing argument.

In stark contrast to the detainee in *Montano*, Simpson was in Young County Jail for a mere eight hours, jail staff were told when they began the booking process that she had been seen by EMS personnel and her vital signs were clear, and she repeated indicated to jail personnel that she was not trying to hurt herself. Op. at 2, 4; ROA. 767, 785, 818, 836-37, 841-42. Yet, the Panel relies on *Montano* to support its conclusion that consistent testimony from jail operators created a fact question as to whether the County has a policy of placing highly intoxicated detainees in holding cells to sleep off intoxication without completing book-in procedures. Op. at 13.

The Panel's conclusion on this point conflates the analysis between episodic acts or omissions and conditions of confinement. Where complained of harm occurs as a result of a jail officials' act or omission, the claim is properly characterized as an episodic act or omission claim. *See, e.g.*, *Scott*, 114 F.3d at 53 (citing *Hare*, 74 F.3d at 645). Contrarily, for a conditions of confinement claim, the condition itself

must cause the harm to a detainee.  *See Duvall*, <u>631 F.3d at 207</u> (explaining that to prevail on a challenge to an unconstitutional condition of confinement, the plaintiff must show that the condition "caused the violation of the [detainee's] constitutional rights").[2]

The Panel's decision overlooks this critical distinction, with the result being that mere placement of an intoxicated pretrial detainee in a holding cell (a practice that is most likely used in municipal and county jails throughout America) is enough to create a fact issue as to the whether the intoxicated pretrial detainee's constitutional right to medical care has been violated.  This result defies not only reality but the requirement that true conditions of confinement claims involve conditions that cause the constitutional harm.  The mere placement of detainees in holding cells to detoxify does not itself cause constitutionally significant harm to a detainee.  It is the failure of jail officials to do what is necessary to properly monitor the detainee—the jail official's act or omission—that harms the detainee. Overlooking this subtle, yet significant fact, the Panel's decision risks turning this Court's decision in *Montano* into an instrument of confusion for future litigants in this area.

---

[2] The distinction is similar to the difference between a premises liability case and a negligence case in tort law.  To establish a condition of confinement case, there must be a pattern of similar incidents caused by the condition to put the governmental entity on notice of the condition.  *Shepherd*, <u>591 F.3d at 452</u>.  There is no such knowledge here.

Equally troubling, this Court's prior precedent makes clear that episodic acts or omissions cannot be recast as jail conditions where there is no evidence that such allegedly de facto policies were pervasive or typical. *Estate of Henson*, <u>795 F.3d at 468</u> n.5 (citing *Shepherd*, <u>591 F.3d at 452</u>). Rather, such episodic acts or omissions should not be included in analyzing the conditions of confinement. *Id.* Further, this Court has previously determined that Appellant could not establish a constitutional violation under the episodic acts and omissions route. *See Sanchez v. Young Cty., Texas*, <u>866 F.3d 274, 280-81</u> (5th Cir. 2017).

## IV. The Panel's analysis of Young County Jail's booking-in procedure encourages courts to apply a watered-down analysis of whether the challenged condition of confinement amounts to punishment of pretrial detainees and to delve into the minutiae of jail operations.

In analyzing Appellants' failure-to-assess allegations, the Panel concluded that a reasonable jury could find that the manner in which the book-in procedure was carried out and the timing of when the book-in procedure was completed could be a substantial factor in causing a denial of medical care. Op. at 13-16. But in reaching this conclusion, the Panel did not take into account the fact that an actionable condition of confinement must be one that amounts to a form of punishment when dealing with a pretrial detainee. *See Bell*, <u>441 U.S. at 536</u>. This Court's precedents teach that courts should avoid focusing too closely on the minutiae of prison operations. *See Estate of Henson*, <u>795 F.3d at 467-68</u> (citations omitted).

As noted above, the reasonable relationship test teaches that, to determine whether a condition is a form of punishment, courts must look to the purpose of the condition imposed upon a pretrial detainee and whether the particular condition of pretrial detention is reasonably related to a legitimate government interest. *See Bell*, 441 U.S. at 539.  In evaluating whether a particular condition is reasonably related to a legitimate government interest and therefore not a form of punishment, the Supreme Court counsels that "in determining 'whether restrictions or conditions are reasonably related to the Government's interest in . . . operating the institution in a manageable fashion,' courts must remember that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials.'" *Estate of Henson*, 795 F.3d at 467-68 (quoting *Bell*, 441 U.S. at 540, n.23).  As this Court has pointed out, "[c]ourts must not become 'enmeshed in the minutiae of prison operations' which will only distract from the question presented: 'does the practice or condition violate the Constitution?'" *Id*. (quoting *Bell*, 441 U.S. at 544, 562).  Critically, the court should not focus on its "idea of how best to operate a detention facility." *Bell*, 441 U.S. at 539.

In concluding Appellants established a triable question as to their failure to assess allegations predicated on the manner and timing in which the booking-in procedure was carried out at Young County Jail, the Panel does not point to or otherwise acknowledge this guidance. *See* Op. at 14-18.  Rather, the Panel takes

issue with the booking procedure and finds that a reasonable jury could conclude it was a substantial factor in in causing a denial of medical care.  Op. at 16.

The practical import of this finding, which the Panel does not acknowledge, is that a jury could reasonably find that the manner and timing of the booking-in procedure amounted to unconstitutional punishment.  *Bell*, <u>441 U.S. at 536</u>.  Yet, the Panel never analyzes the objectives and purposes—legitimate or otherwise—behind the manner and timing of Young County's booking procedure.  *Compare Scott*, <u>114 F.3d at 53</u> (reasoning that where a pretrial detainee's complaint concerns the conditions of her confinement, *Bell's* reasonable relationship test should be applied) (citation omitted).  The Panel instead delves into the minutiae of the booking procedure by focusing primarily on a series of mere allegations related to the procedure and ultimately concludes that a reasonable jury could somehow find the procedure was a constitutionally-impermissible punishment of pretrial detainees. *See* Op. at 15-18.  This trimmed version of the careful analysis called for by *Bell* leaves municipal and county jail operators exposed to authority allowing a critical step in the reasonable-relationship analysis to be skipped.

**V.    At bottom, the Panel's decision exposes municipal and county jail operators to increased risk of liability for suicidal actions pretrial detainees take outside the control and knowledge of those jail operators.**

Perhaps the most concerning implication of the Panel's decision is the ease with which pretrial detainees can potentially hold municipal and county jail

operators liable for the results of actions the detainee takes on his or her own time and outside the presence, control, or knowledge of those jail operators.  Where, as here, the allegations of a violation of a constitutional duty are coupled with what happened ***before*** a person came into custody, those allegations must be tempered because "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol."  *Burnette v. Taylor*, <u>533 F.3d 1325, 1333</u> (11th Cir. 2008) (collecting cases);[3] *see also Evans v. City of Marlin, Tex.*, <u>986 F.2d 104, 107</u> (5th Cit. 1993) (quoting *Burns v. City of Galveston*, <u>905 F.2d 100</u> (5th Cir. 1990)) (noting detention personnel "are not required to 'unerringly detect suicidal tendencies;' such an exacting standard 'requires the skills of an experienced medical professional with psychiatric training . . . .").  Far from tempering such allegations, the Panel's decision leaves municipal and county jail operators exposed to liability for suicidal actions pretrial detainees take outside their control and knowledge.

---

[3] *See Grayson v. Ross*, <u>454 F.3d 802, 809-10</u> (8th Cir. 2006) (concluding there was no "objectively serious medical need" where the arresting officer and jailers knew the plaintiff was likely under the influence of methamphetamine); *Watkins v. City of Battle Creek*, <u>273 F.3d 682, 686</u> (6th Cir. 2001) (affirming summary judgment for defendant officers and jailers where plaintiff denied swallowing drugs but was observed drooling a pink foamy substance, constantly licking his lips, falling out of a chair, grabbing his stomach, and "appeared to be drunk or high"); *Estate of Hocker v. Walsh*, <u>22 F.3d 995, 1000</u> (10th Cir. 1994) (affirming summary judgment for defendant officers and jailers where they did not seek medical treatment for plaintiff who was "obviously ... intoxicated or under the influence of drugs").

# CONCLUSION

Rehearing should be granted, and this case should be heard and considered en banc.  Demonstrative of the importance of maintaining clarity of the law related to municipal liability in this area, this Court has done so in the past.  *See, e.g.*, *Hare*, 74 F.3d at 636 (noting this Court elected to hear the particular case en banc to clarify the legal standard applicable to episodic act or omission claims); *Scott*, 114 F.3d at 52 (noting this Court elected to hear claims of pretrial detainee en banc to consider the proper application of *Hare* to the particular facts).  It should do so again.

Dated:  June 3, 2020

Respectfully submitted,


By:     /s/ G. Todd Butler
        G. Todd Butler, MB #102907
        Nicholas F. Morisani, MB #104970
        PHELPS DUNBAR LLP
        4270 I-55 North
        Jackson, Mississippi  39211-6391
        P.O. Box 16114
        Jackson, Mississippi 39236-6114
        Telephone: (601) 352-2300
        Telecopier: (601) 360-9777

        *Counsel for Amici Curiae*

PD.28868224.1

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed R. App. P. 29(b)(4) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 3,208 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully Submitted,


By:  /s/ G. Todd Butler
      G. TODD BULTER

Dated:  June 3, 2020.

PD.28868224.1

## CERTIFICATE OF SERVICE

I, G. Todd Butler, certify that I electronically filed this brief with the Clerk of the Court, using the electronic filing system, which sent notification of such filing to all counsel of record.

Dated:  June 3, 2020.

/s/ G. Todd Butler
G. TODD BUTLER